

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-821

| | |
|---|---|
| B.D.<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** March 4, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION<br>[NOS.CR2013-1184, CR2013-780, CR2-13-1799]<br><br>HONORABLE HERBERT THOMAS WRIGHT, JUDGE<br><br>AFFIRMED |

### WAYMOND M. BROWN, Judge

This is appellant's interlocutory appeal from the circuit court's denial of his separate motions to transfer case numbers 60CR-13-780, 60CR-13-1184, and 60CR-13-1799 to the juvenile division of circuit court. On appeal, appellant argues that the circuit court erred in denying his motions where it (1) failed to make findings required by Arkansas Code Annotated section 9-27-318(h)(1); (2) made a clearly erroneous finding regarding Arkansas Code Annotated section 9-27-318(g)(4); and (3) made a clearly erroneous finding regarding Arkansas Code Annotated section 9-27-318(g)(7). We affirm.

Appellant has charges under three different case numbers: aggravated robbery and theft of property in case number 60CR-13-1184 arising from events occurring on January 12, 2013; murder in the first degree, two counts of battery in the first degree, and aggravated assault in case number 60CR-13-780 arising from events occurring on January

30, 2013; and domestic battery in the first degree in case number 60CR–13–1799 arising from events occurring on May 12, 2013. In each case, appellant filed a motion to transfer the case to juvenile court.[1]

A juvenile transfer hearing on all three of appellant's transfer motions was held on September 3, 2014. Dr. Bob Gale testified to his opinion that appellant suffered from numerous mental defects including attention deficit hyperactivity disorder (ADHD), conduct disorder, borderline intellectual functioning, intellectual developmental disorder, and dependent personality disorder.[2] He asserted that all of appellant's diagnoses were "amenable to re-training if done properly," but also asserted that it would require "[a]t least -- four or five years" though "not necessarily in the same type of facility." He testified to there being a "50/50 chance of [appellant] being helped through the juvenile system" via use of programs available to appellant there. However, he acknowledged that he was unaware of whether the types of programs he spoke of appellant needing actually

---

[1] Appellant was seventeen years old at the time of each of the indictments. In each motion, appellant asserted that the offense was not "a part of a repetitive pattern of adjudicated offenses that would lead to the determination that the juvenile is beyond rehabilitation" and that the "prior history, character traits and mental maturity all indicate that the juvenile's prospects for rehabilitation are extremely good." The motion in case number 60CR–13–780 was filed on May 12, 2013; the motion in case number 60CR–13–1184, was filed on May 13, 2013. The motion in case number 60CR–13–1799 was filed on June 11, 2013.

[2] He also opined that appellant had elements of autism spectrum disorder, but he did not make a firm diagnosis due to the need for more testing. There was a forensic report from Dr. Lacey C. Willett opining that appellant "did not meet criteria for any [Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition] diagnosis." Dr. Willett asserted in her report that appellant stated that he was diagnosed with ADHD and denied any other history of mental health treatment aside from his hospitalization at Rivendell "due to behavioral problems."

existed in the juvenile system. In the case that they did not, Dr. Gale stated that the juvenile system would guarantee that appellant was "associated with less savory or unsavory people" than if he went to adult prison and "it's more of who he would be around rather than what kind of treatment he would be receiving."

Pertinent witnesses included Felicia Finch, a witness to the events giving rise to case number 60CR-13-1799, who testified to seeing appellant shoot Henderson Sessions, her boyfriend and appellant's uncle.[3] She further testified to the severity of Sessions's injuries, which had necessitated numerous surgeries. Shanna Henderson, victim of the events giving rise to case number 60CR-13-1184, testified to being accosted by appellant with a gun, and immediately thereafter, having her car stolen by appellant. One crime scene investigator testified to taking latent prints from the recovered vehicle. Appellant stipulated to testimony from another worker in the crime scene unit that those prints were found both inside and outside of Henderson's vehicle and that two latent prints, one in the interior and one on the exterior of the vehicle, were identified as belonging to appellant.

Detective Jordan Neufer testified to investigating the incidents giving rise to case number 60CR-13-780. Detective Neufer testified that one victim died from gunshots sustained, another victim received nonfatal gunshot wounds, and a third victim was not

---

[3] Sessions did not testify.

injured. He stated that appellant gave a statement in which he denied possessing a firearm and stated that he was only driving the car.[4]

Appellant's mother, Angela Davis, testified that appellant had problems in school and was on "like ten different medicines." She testified regarding appellant's hard life with Davis being addicted to cocaine and appellant's father being in and out of his life, leaving appellant to be raised either by his sister or his aunt. Appellant's sister testified that appellant did not have problems in school, asserted that appellant had and followed rules, and stated that she never saw appellant leave her home with anyone other than his father.

Following the transfer hearing, the circuit court entered an order on September 4, 2014, denying appellant's motions to transfer his cases to juvenile court. This timely appeal followed.

Appellant's first argument is that the circuit court erred in denying his motions to transfer his cases to the juvenile division of circuit court when it failed to make findings required by Arkansas Code Annotated section 9-27-318(h)(1). Appellant specifically argues that the circuit court failed to make written findings regarding whether the protection of society requires appellant's prosecution in the criminal division of the circuit court. This argument was not presented to the circuit court. A timely request or objection would have enabled the trial court to rule on the issue of whether the amendment applied and to correct whatever deficiency there may have been in the order.[5] A statutory

---

[4] At the hearing, Detective Neufer pointed out appellant on video running from the scene with a firearm in his hand.

[5] *Box v. State*, 71 Ark. App. 403, 406, 30 S.W.3d 754, 756 (2000) (citing *Hawkins v. State*, 270 Ark. 1016, 607 S.W.2d 400 (1980)).

requirement for written findings can be waived.[6] Our rules provide that we will not review an alleged erroneous ruling unless the party makes known to the circuit court the action which he desires the court to take and his grounds therefor.[7] Arguments not raised below, even constitutional ones, are waived on appeal.[8]

Appellant's second and third arguments are that the trial court made clearly erroneous findings with regard to Arkansas Code Annotated sections 9–27–318(g)(4) and (7). Arkansas Code Annotated sections 9–27–318(g)(4) and (7) state that the circuit court shall consider the following factors, among others:

> (4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;
>
>  . . .
>
> (7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday[.]

We cannot hold that the circuit court clearly erred.

---

[6] *Id.* (citing *Brandon v. State*, 300 Ark. 32, 776 S.W.2d 345 (1989); *Lockett v. State*, 271 Ark. 860, 611 S.W.2d 500 (1981); *Hawkins v. State*, 270 Ark. 1016, 607 S.W.2d 400 (Ark. App.1980)) (the requirement in Ark. Code Ann. § 9–27–318(g)(Supp. 1999) that the court "shall make written findings" can be likened to Ark. Code Ann. § 5-4-310(b)(5) (Repl.1997), which requires that a court "shall furnish a written statement of the evidence relied upon and the reasons for revoking suspension or probation," the right to which can be waived).

[7] *Lucas v. Jones*, 2012 Ark. 365 at 9, 423 S.W.3d 580, 585 (citing *Riley v. State Farm Mut. Auto. Ins. Co.*, 2011 Ark. 256, 381 S.W.3d 840; *Turkey Express, Inc. v. Skelton Motor Co.*, 246 Ark. 739, 439 S.W.2d 923 (1969); Ark. R. Civ. P. 46 (2012)).

[8] *Id.* (citing *Tracy v. Dennie*, 2012 Ark. 281, 411 S.W.3d 702).

A prosecuting attorney has the discretion to charge a juvenile sixteen years of age or older in the juvenile or criminal division of circuit court if the juvenile has allegedly engaged in conduct that, if committed by an adult, would be a felony.[9] On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction.[10] The court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred.[11] Clear and convincing evidence is the degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established.[12] We will not reverse a circuit court's determination of whether to transfer a case unless that decision is clearly erroneous.[13] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed.[14]

In the transfer hearing, the court must consider all of the following factors set forth in Arkansas Code Annotated section 9-27-318(g):

---

[9] *R.W.G. v. State*, 2014 Ark. App. 545, at 1, 444 S.W.3d 376, 377 (citing Ark. Code Ann. § 9–27–318(c)(1) (Repl. 2009)).

[10] *Id.* (citing Ark. Code Ann. § 9-27-318(e)).

[11] *Id.* (citing Ark. Code Ann. § 9-27-318(h)(2)).

[12] *Id.*, 2014 Ark. App. at 1-2, 444 S.W.3d at 377 (citing *Lewis v. State*, 2011 Ark. App. 691, at 2).

[13] *Id.*, 2014 Ark. App. at 2, 444 S.W.3d at 377.

[14] *Id.*

1. The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

2. Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

3. Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

4. The culpability of the juvenile, including the level of planning and participation in the alleged offense;

5. The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

6. The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

7. Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

8. Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

9. Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

10. Any other factors deemed relevant by the judge.[15]

However, there is no requirement that proof be introduced against the juvenile on each factor, and the trial court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred.[16] The defendant, as the moving party,

---

[15] (Repl. 2009).

[16] *Id*. (citing *D.D.R. v. State*, 2012 Ark. App. 329, at 3, 420 S.W.3d 494, 496).

bears the burden of proving by clear and convincing evidence that his or her case should be transferred to the juvenile division of circuit court.[17]

Regarding appellant's culpability, factor number four, there was testimony that appellant acted alone in two of the cases appellant sought to have transferred and in concert with others in the third case.[18] Guns were used in all three cases. While appellant did present expert testimony that appellant had a mental defect, there was also a report before the court, in which another expert found that appellant had no mental defect. This court does not make findings of fact.[19] We do not determine the credibility of witnesses.[20]

Even if we found merit in appellant's argument that appellant had a mental defect, and we do not, we would still affirm. The circuit court is not required to weigh all factors equally. With regard to the factors the court was required to consider, the evidence was as follows:

1. Appellant was charged with murder in the first degree, two counts of battery in the first degree, aggravated assault, aggravated robbery, theft of property, and domestic battery in the first degree, all of which were committed with use of a firearm and all of which are serious in nature;

2. Appellant acted in two of the cases by himself, and in concert with the others in the third case, in which, even if one believes appellant's assertion that he did not have a gun, appellant drove the vehicle, thereby making his actions in all three cases willful and violent;

---

[17] *Id.* (citing *Magana-Galdamez v. State*, 104 Ark. App. 280, 291 S.W.3d 203 (2009)).

[18] Appellant acted alone in the events giving rise to case numbers 60CR–13–1184 and 60CR–13–1799, and with others in case number 60CR–13–780.

[19] *Harrison v. Harrison*, 102 Ark. App. 131, 139, 287 S.W.3d 601, 608 (2008).

[20] *Id.*

3. The offenses were against both persons and property where one victim was killed; one victim received critical injuries; one victim received non-critical injuries; and a fourth victim was physically unharmed, though her car was stolen;

4. Again, appellant acted alone in two cases and in concert with others as the driver in the third making him solely culpable in the former two cases and equally culpable in the latter case, all of which exhibited little to no planning;

5. There was no previous criminal history presented;

6. Appellant failed to display a high level of sophistication or maturity as testified to by Dr. Gale and opined by Dr. Willett in her court-ordered forensic report; furthermore, appellant's home life was "abysmal," as stated by the court in its order, where his mother was addicted to crack cocaine and appellant's father was in and out of his life;

7. We accept that there were resources available to appellant in the juvenile system as stated by the court,[21] but appellant would not likely be rehabilitated by his twenty-first birthday as testified to by Dr. Gale who stated that appellant would require at least four to five years to be rehabilitated[22] and that after appellant aged out of the juvenile system, he would hopefully "have made enough gains that he would then be eligible either for specialized programs in the adult prison, or in some kind of secure half-way house or rehabilitation facility;"

8. Appellant acted alone in some offenses and in concert with others in the rest;

9. The court reviewed a mental evaluation of appellant;[23] and

---

[21] No resources were listed and Dr. Gale could not name any specific programs. Furthermore, Dr. Gale was unsure if the types of programs he spoke of generally as possibly benefitting appellant actually existed in the juvenile system.

[22] Appellant was eighteen years old and less that one month shy of his nineteenth birthday on the date of the hearing.

[23] We are not clear if the circuit court is referring to Dr. Gale's report or Dr. Willett's report. However, both Dr. Gale's report and Dr. Willet's report were submitted as exhibits; therefore, without evidence to the contrary, we find that the court considered both reports. *See Dunaway v. Ragsdale*, 177 Ark. 718, 9 S.W.2d 6 (1928) (we must assume that in a trial without a jury, the circuit court considered only competent and relevant evidence).

10. The court specifically found that the accusations in all three cases, if proven, showed appellant to be engaged in "systematic and violent criminal actions."

In light of all the factors the court had to weigh, we are not left with a firm conviction that a mistake has been committed. Because the circuit court was not required to weigh the factors equally, a finding that appellant had a mental defect would not necessitate reversal. The circuit court committed no error.

Regarding the availability of programs in the juvenile system that could rehabilitate appellant by his twenty-first birthday, factor number seven, appellant makes the argument that the correct inquiry is whether facilities or programs are available to the *judge* of the juvenile division and not whether there are programs and facilities available to the juvenile division of the circuit court, as found by the circuit court below. This argument is as appellant's first argument in which he questions the accuracy of the circuit court's written findings as compared to the requirements of the statute. This argument was not presented to the circuit court. As stated above, a timely request or objection would have enabled the trial court to rule on the issue of whether the amendment applied and to correct whatever deficiency there may have been in the order, and the failure to make a timely request or objection can cause a statutory requirement for written findings to be waived. This argument was not preserved.[24]

Affirmed.

GLADWIN, C.J., and KINARD, J., agree.

*Willard Proctor , Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Rebecca B. Kane*, Ass't Att'y Gen., for appellee.

---

[24] *See R.F.R. v. State*, 2009 Ark. App. 583, 337 S.W.3d 547.